1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CATHERINE BROWN,                          No.  2:12-cv-01863-KJN

12              Plaintiff,

13        v.                                   ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                 Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI")

20   under Title XVI of the Social Security Act ("Act").[1]  In her motion for summary judgment,

21   plaintiff principally contends that the Commissioner erred by finding that plaintiff was not

22   disabled from December 2, 2008, the date that her SSI application was filed, through the date of

23   the final administrative decision.  (ECF No. 13.)  The Commissioner filed an opposition to

24   plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 14.)

25   ////

26

27   ───────────────────────────
     [1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and
28   both parties voluntarily consented to proceed before a United States Magistrate Judge for all
     purposes.  (ECF Nos. 7, 9.)

                                              1

1    For the reasons that follow, the court denies plaintiff's motion for summary judgment,

2 grants the Commissioner's cross-motion for summary judgment, and enters judgment for the

3 Commissioner.

4 I.    BACKGROUND

5    Plaintiff was born on November 24, 1961, has a 7th grade education, and worked briefly

6 as a cook's helper in 2000.[2]  (Administrative Transcript ("AT") 29, 51, 53.)  Around December 2,

7 2008, plaintiff applied for SSI, alleging that she was unable to work as of 2004.  (AT 14, 168.)

8 Plaintiff primarily complained of hip and leg injuries, nerve damage, and depression resulting

9 from a 2004 car accident.  (AT 32, 168.)  Plaintiff claimed that she was in constant pain and

10 suffered from arthritis affecting her entire body, leading to difficulty walking, driving, and

11 completing other daily functions.  (AT 168.)  On June 16, 2009, the Commissioner determined

12 that plaintiff was not disabled.  (AT 81.)  Upon plaintiff's request for reconsideration, the

13 determination was affirmed on November 23, 2009.  (AT 87.)  Thereafter, plaintiff requested a

14 hearing before an administrative law judge ("ALJ"), which took place on October 14, 2010, and

15 at which plaintiff (represented by counsel) and a vocational expert ("VE") testified.  (AT 24, 92.)

16    In a decision dated February 8, 2011, the ALJ determined that plaintiff had not been under

17 a disability, as defined in the Act, from December 2, 2008, the date that her SSI application was

18 filed, through the date of the ALJ's decision.  (AT 14-22.)  The ALJ's decision became the final

19 decision of the Commissioner when the Appeals Council denied plaintiff's request for review on

20 May 17, 2012.  (AT 2.)  Thereafter, plaintiff filed this action in federal district court on July 16,

21 2012, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

22 II.    ISSUES PRESENTED

23    Plaintiff has raised the following two issues: (1) whether the ALJ improperly discounted

24 the opinions of treating physician Dr. Moghtader and consultative examining physician Dr.

25 Bradford; and (2) whether the ALJ failed to properly question the VE and credit the VE's

26 ───────────────

27 [2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are

28 relevant to the issues presented by the parties' respective motions.

1    responses to hypothetical questions.

2    III.   LEGAL STANDARD

3          The court reviews the Commissioner's decision to determine whether (1) it is based on

4    proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

5    as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

6    evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

7    F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

8    mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

9    Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

10   responsible for determining credibility, resolving conflicts in medical testimony, and resolving

11   ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The

12   court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational

13   interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

14   IV.   DISCUSSION

15         A.   Summary of the ALJ's Findings

16         The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard

17   five-step analytical framework.[3]  At the first step, the ALJ concluded that plaintiff had not

18   _____

19   [3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social
     Security program.  42 U.S.C. §§ 401 et seq.   Supplemental Security Income is paid to disabled

20   persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as
     an "inability to engage in any substantial gainful activity" due to "a medically determinable

21   physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel
     five-step sequential evaluation governs eligibility for benefits under both programs.  See 20

22   C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-
     42 (1987).  The following summarizes the sequential evaluation:

23
         Step one: Is the claimant engaging in substantial gainful activity?  If so, the
24       claimant is found not disabled.  If not, proceed to step two.

25       Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step
26       three.  If not, then a finding of not disabled is appropriate.

27       Step three: Does the claimant's impairment or combination of impairments meet or
         equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the
28       claimant is automatically determined disabled.  If not, proceed to step four.

engaged in substantial gainful activity since December 2, 2008, plaintiff's SSI application date.

(AT 16.)  At step two, the ALJ determined that plaintiff had the following severe impairments:

left acetabular and pelvic fractures status post open reduction with probable arthritis.  (Id.)

However, at step three, the ALJ determined that plaintiff did not have an impairment or

combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part

404, Subpart P, Appendix 1.  (AT 17.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity

("RFC") as follows:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform sedentary work as defined in 20 CFR 416.967(c), except
> that she can lift and/or carry 20 pounds occasionally and 10 pounds
> frequently, stand and/or walk 2 hours in an 8-hour workday so long
> as she uses a cane to walk long distances, sit 6 hours in an 8-hour
> workday, frequently stoop, occasionally balance, kneel, or climb
> ramps and stairs, and never climb ladders, ropes, or scaffolds,
> crouch, crawl, or work around hazards such as dangerous moving
> machinery and unprotected heights. In addition, the claimant should
> avoid concentrated exposure to temperature extremes,
> wetness/humidity, and pulmonary irritants.

(AT 17.)

At step four, the ALJ found that plaintiff had no past relevant work.  (AT 20.)  Finally, at

step five, the ALJ determined, in reliance on the VE's testimony, that considering plaintiff's age,

education, work experience, and RFC, there were jobs in significant numbers in the national

_____

> Step four:  Is the claimant capable of performing his past relevant work?  If so, the
> claimant is not disabled.  If not, proceed to step five.

> Step five:  Does the claimant have the residual functional capacity to perform any
> other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
evaluation process proceeds to step five.  Id.

1   economy that plaintiff could perform.  (AT 21.)  Specifically, the VE testified that plaintiff would

2   be able to perform the following representative occupations: (1) sorter, a sedentary occupation

3   with a specific vocational preparation ("SVP") of 2, and with 430,450 positions nationally and

4   48,760 positions in California; (2) assembler, a sedentary occupation with a SVP of 2, and with

5   25,750 positions nationally and 5,790 positions in California; and (3) agricultural worker in a

6   factory setting, a sedentary occupation with a SVP of 1, and with 2.1 million positions nationally

7   and 237,070 positions in California.  (AT 21, 54-56.)

8          Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined

9   in the Act, from plaintiff's SSI application date of December 2, 2008, through the date of the

10  ALJ's decision.  (AT 21.)

11         B.     Plaintiff's Substantive Challenges to the Commissioner's Determinations

12                1.     Whether the ALJ improperly discounted the opinions of treating

13                       physician Dr. Moghtader and examining physician Dr. Bradford

14         The weight given to medical opinions depends in part on whether they are proffered by

15  treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195,

16  1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more

17  weight is given to the opinion of a treating professional, who has a greater opportunity to know

18  and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir.

19  1996).

20         To evaluate whether an ALJ properly rejected a medical opinion, in addition to

21  considering its source, the court considers whether (1) contradictory opinions are in the record;

22  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

23  treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

24  F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be

25  rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating

26  professional's opinion generally is accorded superior weight, if it is contradicted by a supported

27  examining professional's opinion (supported by different independent clinical findings), the ALJ

28  may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

1   Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

2   weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ

3   in any event need not give it any weight if it is conclusory and supported by minimal clinical

4   findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory,

5   minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

6   non-examining professional, without other evidence, is insufficient to reject the opinion of a

7   treating or examining professional.  Lester, 81 F.3d at 831.

8          The primary question in this case is whether the ALJ properly and reasonably analyzed

9   the medical opinion evidence concerning plaintiff's sitting limitations, which in turn determine

10  whether she was capable of performing sedentary work.  Before turning to the ALJ's analysis, the

11  court briefly outlines the pertinent medical opinions.

12              a.   Summary of Medical Opinions

13         On March 11, 2007, consultative examiner Dr. McIntire performed an orthopedic

14  evaluation of plaintiff.  (AT 233-36.)  Dr. McIntire noted that plaintiff's chief complaint was a hip

15  injury.  (AT 233.)  Upon examination, Dr. McIntire found that plaintiff's coordination and station

16  were "[w]ithin normal limits" and that no assistive device was used or needed for ambulation.

17  (AT 234.)  During the examination, plaintiff was able to walk on heels and toes in tandem and

18  displayed no foot drop.  (AT 234.)  Plaintiff's Romberg test was negative.  (Id.)  Dr. McIntire

19  noted that plaintiff had a "mildly diminished range of motion" in the left hip compared to the

20  right hip and "slight tenderness" over the area of a scar in the left lateral pelvis.  (AT 235.)

21  Furthermore, Dr. McIntire noted normal "muscle bulk and tone" and good proximal and distal

22  motor strength throughout plaintiff's upper and lower extremities.  (Id.)  Dr. McIntire also

23  observed "no significant gait abnormalities."  (Id.)  Dr. McIntire diagnosed plaintiff with "status

24  post open reduction internal fixation of the left acetabular and pelvic fractures" and "probable

25  osteoarthritis of left and right hips."  (Id.)  Dr. McIntire opined that plaintiff should not "engage in

26

27  [4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3)
    nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency;
28  and (6) specialization.  20 C.F.R. § 404.1527.

1   activities requiring frequent squatting, crawling, kneeling, or climbing"; should avoid lifting and

2   carrying "more than thirty pounds"; and was limited to three to four hours of walking or standing

3   in an eight-hour workday, but had no sitting limitations.  (AT 235-36.)

4          Thereafter, on May 2, 2009, consultative examining physician Dr. Bradford conducted an

5   orthopedic evaluation of plaintiff.  (AT 273-76.)  At this examination, plaintiff complained of

6   pain in the left hip and left leg.  (AT 273.)  Although plaintiff appeared to be experiencing a "mild

7   amount of distress" during the examination, plaintiff was able to sit comfortably, only had mild

8   difficulty getting on and off the exam table, and was able to take her shoes on and off.  (AT 274.)

9   Plaintiff's straight leg raising test was negative in the sitting position bilaterally. (AT 275.)

10   Additionally, Dr. Bradford noted only "mild discomfort with passive internal and external

11   rotation of the left hip."  (Id.)  Plaintiff had an antalgic gait and complained of discomfort when

12   squatting, but was able to toe and heel walk, bend, and arise from a sitting position during the

13   examination.  (AT 274.)  While plaintiff told Dr. Bradford that she used a cane for long distances,

14   plaintiff did not bring the cane with her to the examination.  (Id.)  Dr. Bradford noted that

15   plaintiff's motor strength was good with only slightly decreased strength in "hip flexion and

16   extension [and] knee flexion and extension on the left."  (AT 275.)  Dr. Bradford diagnosed

17   plaintiff with "left acetabular fracture status post open reduction and internal fixation" as

18   "evidenced by decreased range of motion and mild decreased strength, subjective pain in hip and

19   antalgic gait."  (AT 276.)  Dr. Bradford indicated that plaintiff could frequently lift up to twenty

20   pounds but plaintiff should avoid climbing, balancing, bending, stooping, and crouching.  (Id.)

21   Dr. Bradford opined that plaintiff was able to stand and walk for two hours in an eight-hour

22   workday; needed to use a cane for both long and short distances, and avoid uneven terrain; and

23   could sit for four hours in an eight-hour workday.  (Id.)

24          Subsequently, on May 21, 2009, state agency physician Dr. Halpern reviewed plaintiff's

25   medical records and performed a functional assessment.  (AT 297-302.)  Dr. Halpern determined

26   that while plaintiff could occasionally lift twenty pounds and frequently lift ten pounds, plaintiff

27   suffered no limitations in pushing or pulling beyond those restrictions.  (AT 298.)  Furthermore,

28   Dr. Halpern found that plaintiff had no reaching, handling, fingering, or feeling limitations.  (AT

300.)  Additionally, Dr. Halpern opined that plaintiff could occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds, and never crouch or crawl; occasionally balance and kneel; and frequently stoop.  (Id.)  According to Dr. Halpern, plaintiff was to avoid work around hazards and avoid concentrated exposure to extreme temperatures, wetness, and respiratory irritants like fumes and dust.  (AT 301.)  Finally, with respect to standing, walking, and sitting limitations, Dr. Halpern noted that plaintiff could stand or walk for at least two hours in an eight-hour workday (using a cane for long distances) and sit for six hours in an eight-hour workday.  (AT 298.)  On November 20, 2009, state agency physician Dr. Friedman reviewed plaintiff's medical records and affirmed Dr. Halpern's earlier findings.  (AT 312.)

Finally, on April 5, 2010, plaintiff's treating physician, Dr. Moghtader, prepared a medical report.  (AT 321-26.)  Dr. Moghtader noted that plaintiff could occasionally carry up to ten pounds; frequently lift up to ten pounds; and occasionally lift between eleven and twenty pounds.  (AT 322-23.)  According to Dr. Moghtader, plaintiff could occasionally climb, balance, stoop, crouch, kneel, and crawl.  (AT 324.)  Furthermore, Dr. Moghtader determined that plaintiff had no grasping or fine manipulation limitations in either her hands or her feet.  (AT 323.)  Dr. Moghtader also found that plaintiff should avoid exposure to heights and proximity to moving machinery.  (AT 325.)  Dr. Moghtader opined that plaintiff could sit for four hours, stand for two hours, and walk for two hours total in an eight-hour workday.  (AT 323.)  Paradoxically, Dr. Moghtader concluded that plaintiff could sit for six hours, stand for one hour, and walk for zero hours at one time without interruption.  (Id.)

With the above-mentioned record evidence in mind, the court now turns to the ALJ's treatment of Dr. Moghtader's and Dr. Bradford's opinions.

b.  ALJ's Resolution of Ambiguity Within Dr. Moghtader's Report

The court finds that Dr. Moghtader's opinion with respect to plaintiff's sitting limitations is ambiguous.  (AT 323.)  As noted above, Dr. Moghtader indicated that plaintiff could sit for a total of four hours in an eight-hour workday while also indicating that plaintiff could sit for six hours at one time without interruption.  (Id.)

////

8

1    The ALJ resolved the ambiguity by interpreting Dr. Moghtader's notations to mean that

2    plaintiff was able to sit for four hours uninterrupted and for six hours total in an eight-hour work

3    day.  (AT 20.)  The court finds that the ALJ's resolution of the ambiguity in Dr. Moghtader's

4    report was reasonable and supported by substantial evidence.  Indeed, it is very plausible that Dr.

5    Moghtader had simply inadvertently switched the assessments for uninterrupted sitting and the

6    total amount of sitting in an eight-hour workday.  Furthermore, Dr. Moghtader's conservative

7    treatment plan for plaintiff, including treatment with ibuprofen and acetaminophen, supports the

8    ALJ's less restrictive interpretation of Dr. Moghtader's ambiguous report.  (AT 330, 336.)  <u>See</u>

9    <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 (9th Cir. 1995) (doctor's prescription of only conservative

10   treatment suggests lower levels of both pain and functional limitation).  Moreover, the ALJ's

11   construction of Dr. Moghtader's report is also consistent with several other opinions in the record,

12   including the opinions of the state agency physicians (who each found that plaintiff could sit for

13   six hours total in an eight-hour workday) and the opinion of consultative examiner Dr. McIntire,

14   who opined that plaintiff had no sitting limitations.

15   Plaintiff argues that the ALJ should instead have interpreted Dr. Moghtader's opinion as

16   imposing a sitting limitation of four hours total in an eight-hour workday.  As an initial matter,

17   even if plaintiff's interpretation were equally rational, plaintiff offers no explanation for why her

18   rational interpretation should supplant that of the ALJ.  Moreover, in this case, the ALJ's

19   interpretation actually appears to be superior, because it at least accounts for the six-hour

20   limitation notation in Dr. Moghtader's report, i.e., the possibility that the four-hour and six-hour

21   notations were switched.  By contrast, plaintiff's interpretation entirely ignores the existence of

22   the six-hour notation.

23   In sum, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical

24   evidence." <u>Tommasetti</u>, 533 F.3d at 1041.  As such, the court declines to second-guess the ALJ's

25   rational and reasonable interpretation of Dr. Moghtader's opinion.

26            c.   <u>ALJ's Weighing of Dr. Bradford's opinion</u>

27   Plaintiff also contends that the ALJ improperly rejected consultative examiner Dr.

28   Bradford's opinion that plaintiff was limited to sitting no more than four hours total in an eight-

9

1   hour workday.  (AT 276.)  The court finds that substantial evidence supports the ALJ's

2   discounting of that opinion.

3       Dr. Bradford's opinion as to plaintiff's sitting limitation is inconsistent with the weight of

4   the medical opinion evidence, including the opinion of plaintiff's treating physician Dr.

5   Moghtader (as reasonably and rationally interpreted by the ALJ), the opinion of consultative

6   examiner Dr. McIntyre, and the opinions of the state agency physicians.[5]  (AT 236, 276, 298,

7   312.)

8       Additionally, plaintiff's treatment records do not support Dr. Bradford's more severe

9   sitting limitation.  As the ALJ observed, plaintiff frequently did not mention any leg or hip pain to

10  her treatment providers.  (AT 19, 257-58, 260-61.)  Indeed, when plaintiff visited San Joaquin

11  General Hospital on three occasions in 2008, she made no mention of hip pain.  (AT 254-58, 260-

12  61.)  On one such visit on March 19, 2008, plaintiff presented for "a complete physical

13  examination" and was found to have full muscle strength in all four quadrants and was "not in

14  acute distress."  (AT 260-61.)

15      Furthermore, Dr. Bradford's opinion relied in part on plaintiff's subjective complaints of

16  pain.  (AT 276.)  However, as the ALJ noted, a prior investigation raises significant concerns as

17  to plaintiff's credibility.  (AT 217-23.)  After reports of possible malingering during plaintiff's

18  interview at the Social Security Administration office, the Cooperative Disability Investigations

19  Unit conducted an investigation between February 23, 2007, and March 7, 2007, as to the veracity

20  of plaintiff's disability claims.  (AT 220-21.)  During the inquiry, investigators spoke to two of

21  plaintiff's neighbors, who both stated that they had never seen plaintiff use an ambulation aid of

22  any kind.  (AT 221.)  One neighbor indicated that plaintiff drives a car, and further investigation

23  revealed that plaintiff has a car registered to her name.  (Id.)  After the investigators made contact

24  with plaintiff, plaintiff stated that she could cook, pay bills, go grocery shopping, and

25  occasionally perform household chores.  (AT 222.)  Plaintiff informed investigators that she was

26

27  [5] A non-examining expert's opinion "may constitute substantial evidence when it is consistent
    with other independent evidence in the record."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th
28  Cir. 2001).

looking for work and applied for SSI as a "financial backup." (Id.) She indicated that she was not taking any medication for pain and was told to take Motrin. (Id.) Plaintiff also stated that she does not participate in any physical therapy programs, although she has Medi-Cal coverage. (Id.) Investigators noted that plaintiff appeared to have a normal gait and station and did not seem to be suffering any mental or physical distress. (Id.) Finally, when asked, plaintiff could not locate her cane even with the help of her son.[6] (Id.) The investigation contradicts much of plaintiff's testimony at the hearing concerning her pain and severe functional limitations. (AT 31-33, 37, 40.)

Therefore, the court finds that the ALJ properly evaluated the medical opinion evidence, and that the assessed RFC is supported by substantial evidence in the record as a whole.

2. Whether the ALJ failed to both properly question the VE and credit the VE's responses to hypothetical questions

Upon close inspection, plaintiff's second issue is more properly framed as derivative of plaintiff's first issue. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175-76 (9th Cir. 2008) ("In arguing the ALJ's hypothetical was incomplete, [plaintiff] simply restates her argument that the ALJ's RFC finding did not account for all her limitations because the ALJ improperly discounted her testimony and the testimony of medical experts").)

Here, because the ALJ relied on the testimony of the VE, which in turn was based on a RFC and hypothetical supported by substantial evidence in the record as a whole, the ALJ's decision was free from legal error.

////

////

---

[6] Even if plaintiff required a cane for long distances, as the ALJ generously found, the VE testified that the representative occupations, for purposes of step five of the sequential evaluation process, generally did not include walking long distances, resulting in minimal erosion of the number of available jobs. (AT 54-55, 60.) Furthermore, the ALJ properly rejected Dr. Bradford's opinion that plaintiff would require a cane even for short distances, because that opinion is conclusory and minimally supported. Meanel, 172 F.3d at 1114; Magallanes, 881 F.2d at 751. Indeed, plaintiff told Dr. Bradford that she used her cane for long distances and did not even have her cane at the evaluation. (AT 274.)

V.      CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 14) is GRANTED.

3. Judgment is entered for the Commissioner.

4. The Clerk of Court is directed to close this case and vacate all dates.

IT IS SO ORDERED.

Dated:  October 9, 2013

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

12